Matter of Eisenberg (Censeohealth LLC--Commissioner of Labor) (2022 NY Slip Op 03164)

Matter of Eisenberg (Censeohealth LLC--Commissioner of Labor)

2022 NY Slip Op 03164

Decided on May 12, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 12, 2022

533453
[*1]In the Matter of the Claim of David J. Eisenberg, Respondent. Censeohealth LLC, Appellant. Commissioner of Labor, Respondent.

Calendar Date:March 22, 2022

Before:Lynch, J.P., Clark, Reynolds Fitzgerald, Colangelo and McShan, JJ.

Barclay Damon LLP, Syracuse (Michael J. Sciotti of counsel) and Bass, Berry & Sims PLC, Nashville, Tennessee (Robert W. Horton of counsel, admitted pro hac vice), for appellant.
Scher Law Firm, LLP, Carle Place (Austin Graff of counsel), for David J. Eisenberg, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.

Reynolds Fitzgerald, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed November 9, 2020, which ruled, among other things, that CenseoHealth LLC was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
CenseoHealth LLC (hereinafter CH) is a business that contracts with various health insurance providers to conduct in-home health assessments for individuals covered under Medicare Advantage and other similar plans. To this end, CH retained claimant, a physician, to perform in-home health assessment services. When claimant ceased to provide said services, he applied for unemployment insurance benefits. The Department of Labor issued a determination finding that claimant was an employee of CH but, following a hearing, an Administrative Law Judge disagreed, finding that no employment relationship existed. Upon review, the Unemployment Insurance Appeal Board reversed, sustaining the Department's initial determination finding that claimant and other similarly situated physicians were employees of CH. This appeal ensued.
"Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review" (Matter of Thomas [US Pack Logistics, LLC-Commissioner of Labor], 189 AD3d 1858, 1859 [2020] [internal quotation marks and citations omitted]; accord Matter of Paratore [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d 1196, 1197 [2021]). "Substantial evidence is a minimal standard that demands only such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Matter of Blomstrom [Katz-Commissioner of Labor], 200 AD3d 1232, 1233 [2021] [internal quotation marks and citations omitted]; see Matter of Quesada [Columbus Mgt. Sys., Inc.-Commissioner of Labor], 198 AD3d 1036, 1036 [2021]). "Where, as here, the work of medical professionals is involved, the pertinent inquiry is whether the purported employer retained overall control over the work performed" (Matter of Lawlor [ExamOne World Wide Inc.-Commissioner of Labor], 130 AD3d 1345, 1346 [2015] [internal quotation marks, brackets and citations omitted]; see Matter of Armbruster [Summit Health, Inc.-Commissioner of Labor], 138 AD3d 1367, 1368 [2016], lv dismissed 28 NY3d 946 [2016]). "[A]n organization which screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Kliman [Genesee Region Home Care Assn., Inc.-Commissioner of Labor], 141 AD3d 1049, 1050 [2016] [internal quotation marks and citations omitted]; see Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d 755, 757 [2019]).
The record reflects that claimant responded to an advertisement [*2]for a work opportunity posted by CH and that, thereafter, CH engaged in a verification process of claimant's credentials prior to entering into a written agreement with him to provide health assessment services to Medicare and other insurance plan members on behalf of CH's clients. Claimant was required to complete training related to Medicare compliance and the use of CH's mandatory tablet device and health assessment forms. Claimant was compensated for his services based upon a set rate, which could include — depending upon various factors — an additional per diem allowance and coverage of certain travel expenses. CH also paid for claimant's medical malpractice insurance coverage and, further, required him to notify CH of any disciplinary actions or malpractice claims.
Claimant was free to refuse or cancel accepted assignments without penalty, but CH selected any substitutes and claimant was not permitted to have an assistant without CH's verification and approval. Once claimant informed CH of his availability, CH handled the scheduling of health assessments and informed him of the name and address of the plan member to be assessed. Claimant was required to wear a provided identification badge and it was recommended that he wear a white lab coat when conducting assessments. Claimant used mostly his own medical equipment when conducting health assessments, but CH provided some technology and all lab equipment to collect any necessary samples for testing. Although claimant asked some of his own questions to plan members, his required assessment included the answering of a CH created health assessment form, a noninvasive physical exam, and the taking of laboratory samples as explicitly requested by CH. Claimant was not permitted to provide any other treatment or medical services to plan members.
CH reviewed a physician's submitted health assessment and would contact him or her to resolve any inconsistencies or to address any incompleteness. CH fielded complaints and claimant, in turn, was permitted to contact CH if he encountered difficulty with a plan member or CH's provided technology. Although claimant was permitted to engage in other work, the written agreement required that he pay a substantial recruitment fee if he worked directly with CH's clients or affiliates within two years of terminating his services with CH.
In view of the foregoing, notwithstanding evidence in the record that might support a contrary conclusion, we find that substantial evidence supports the Board's decision that CH retained sufficient overall control over the work performed by claimant and those physicians similarly situated to establish an employment relationship (see Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d at 757-758; Matter of Dillon [Commissioner of Labor], 163 AD3d 1307, 1308-1309 [2018]; Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d 1210, 1210-1211 [2017]; Matter of Armbruster [Summit Health[*3], Inc.-Commissioner of Labor], 138 AD3d at 1368-1369; Matter of Mackey [Prometric Inc.-Commissioner of Labor], 120 AD3d 1493, 1494-1495 [2014]; Matter of Scinta [ExamOne World Wide Inc.-Commissioner of Labor], 113 AD3d 959, 960-961 [2014]; compare Matter of Jean-Pierre [Queens Perioperative Med. Assoc. PLLC-Commissioner of Labor], 119 AD3d 1206, 1207-1208 [2014]). To the extent that CH's remaining contentions are not expressly addressed, they have been considered and found to be without merit.
Lynch, J.P., Clark, Colangelo and McShan, JJ., concur.
ORDERED that the decisions are affirmed, without costs.